**BOSCO MIDDLE EAST OIL CORPORA-TION, Plaintiff,**

v.

**BANK OF AMERICA, Investitions und Handelsbank, Ag. and Sahara Bank, Defendants.**

No. 72 Civ. 985.

United States District Court,
S. D. New York.

March 28, 1972.

Trubin, Sillcocks, Edelman & Knapp, of New York City, for plaintiff; Albert I. Edelman, New York City, of counsel.

Seward & Kissel, New York City, for defendant Bank of America; Eugene P. Souther, Anthony R. Mansfield, and Anthony C. J. Nuland, New York City, of counsel.

METZNER, District Judge:

Plaintiff seeks a preliminary injunction in a lawsuit which has its roots in alleged confiscatory actions taken by the Libyan government against foreign oil companies.

Plaintiff is a Texas corporation which obtained oil exploration concessions from the government of Libya in 1966. The Libyan Petroleum Law required that a banker's guarantee be furnished in favor of the Petroleum Ministry in the amount of 50,000 Libyan pounds for each concession "to be renewable from year to year." The guarantees here amounted to $307,000.

The guarantees were arranged for by two stockholders of plaintiff, one of whom lives in the Netherlands and the other in Frankfurt, West Germany. The former has submitted the major affidavit in support of this motion. They gave their guarantees to Investitions und Handelsbank of Frankfurt (IHB),

which then gave its guarantees to the Bank of America here in New York, which in turn gave its guarantees to the Sahara Bank in Tripoli (Sahara), which then issued its guarantees to the Petroleum Ministry of Libya. The current guarantees expired on March 15, 1972, the day after this motion was argued to the court.

The three banks are the only defendants named in this lawsuit which seeks to permanently enjoin them from violating the terms of the guarantees by paying any money to the Libyan government in response to its claim for payment. Service of the complaint has only been effected on the Bank of America, which is the defendant against whom this preliminary injunction is sought. It is alleged that the claims for payment are unjust, arbitrary and part of the government's policy of confiscating property owned by foreigners in Libya.

On March 7, 1972, the Bank of America received a telex from Sahara stating that under the guarantees it had that day received "from Ministry of Petroleum claim for payment in full which states that Bosco Middle East has failed to meet its obligations in compliance with Petroleum Law under their concession." Sahara made formal demand for payment by Bank of America under its guarantees and directed that Sahara's account be credited accordingly. Since Sahara is in an overall debtor position with Bank of America, the latter, as creditor, will not actually transfer money to Sahara. It will merely enter a credit to Sahara's account in the necessary amount. Incidentally, Bank of America has requested reimbursement from IHB, which has agreed that its account be debited in the appropriate amount. I assume that the next step will be a call by IHB on the two stockholders in Frankfurt and the Netherlands.

Plaintiff, in its papers, has detailed what it considers are the baseless claims upon which the Libyan government has requested payment of the guarantees. It contends that it has faithfully carried out the terms of the concession deeds and that there cannot possibly be found any default in its obligations thereunder. While it was obligated to spend only $115,000 in connection with the concessions, since they were granted plaintiff has spent over $4,000,000. This is quite an investment in dry holes, since the papers do not indicate that any tangible results have been obtained from plaintiff's explorations. It urges that if the Bank of America pays on the guarantees then plaintiff will not be able to get any satisfaction in the Libyan courts because that country is committed to the confiscation of American-owned property and the calling of these guarantees is part of the overall plan.

Finally, plaintiff urges that its dispute with the government is subject to an arbitration clause in the concession deeds. It desires the funds to be held in status quo pending the completion of the arbitration proceedings. The arbitration clause provides that in the event of a dispute between the parties the matter shall be referred to two arbitrators, one of whom shall be appointed by each party. The two arbitrators then appoint an umpire, and if they cannot agree upon one, he is to be appointed by the president of the International Court of Justice. Plaintiff states that it has initiated proceedings under this clause by service of a notice.

The position of the Bank of America in opposing this motion is that it is not involved in and has no knowledge of the problems existing between plaintiff and the Libyan government. It never had any dealings with plaintiff or the Libyan government. It entered into a normal banking and commercial transaction. This it did at the behest of IHB, which instructed the Bank of America as to the wording of the guarantees that should be furnished Sahara and was contained in Sahara's guarantees to the Libyan government. The pertinent part of the guarantee reads:

"We agree to pay this amount to you on first demand, notwithstanding any contestation from the above named, upon presentation of a state-

ment by your Ministry confirming non-compliance on the part of Bosco Middle East Oil Corporation with the above Law."

There then follows an irrevocable undertaking of reimbursement by Bank of America to Sahara for any amounts paid by Sahara pursuant to the guarantee.

While the court is sympathetic to plaintiff's plight (based, of course, on the ex parte presentation of facts), an analysis of the situation supplies no basis for granting plaintiff's motion.

In the first place, the plaintiff has failed to show that there exists a clear legal right to the relief sought in the complaint and irreparable injury which outweighs any possible injury to the defendant. Societe Comptoir de L'Industrie Cotonniere Establissements Boussac v. Alexander's Dept. Stores, 299 F.2d 33, 35 (2d Cir. 1962). Plaintiff furnished the guarantees knowing full well that payment could be demanded by the government simply stating that the plaintiff is not in compliance with the law. The truth or falsity of the charge cannot be a question for the banks to determine at their peril. That was not their undertaking. It was plaintiff who agreed that payment had to be made "notwithstanding any contestation" by plaintiff.

The irreparable injury claimed is the loss of $307,000. But the party causing the irreparable injury is the Libyan government, not these defendants. If the Bank of America is liable to plaintiff under some theory of law, it can adequately respond in money damages.

What plaintiff is seeking to accomplish as a practical matter is to make the Bank of America bear the burden of litigating plaintiff's claim. If there could be an attachment against assets of the Libyan government here, some basis might be created for an effective judicial resolution of plaintiff's problem. This assumes overcoming the hurdle of sovereign immunity. Since plaintiff has not sought relief in that context, I gather it is not possible to achieve. Thus the injunction against transfer of the funds is supposed to bring the desired result. But the government already has the money and the bank has no better means of recourse than plaintiff. How does it enforce a claim against Sahara, which, being in a debtor relationship to the Bank of America, has the whip hand? Any suit by the bank against Sahara in Libya runs afoul of the same attitude that plaintiff claims it cannot deal with.

The plea that the status quo be maintained while plaintiff seeks its remedy against Libya by way of arbitration is equally fanciful. If what plaintiff says is true about the attitude in Libya, the government will not appoint an arbitrator nor be bound by any award that may issue in default of that appointment. There never will be an arbitration.

Absent the Libyan government, there cannot be an effective resolution of the controversy. It is the other party to the dispute, and the only one who can answer plaintiff's contentions of arbitrary, capricious and illegal actions. Plaintiff urges that the forum court will not give effect to confiscatory actions of a foreign government, citing Zwack v. Kraus Bros. & Co., 237 F.2d 255 (2d Cir. 1956). Assuming that what has occurred here is similar to nationalization, which was dealt with in the *Zwack* case, the case is not in point. There the defendants were resisting a claim by a Hungarian manufacturer of trademark infringement in this country. They urged that the true owner at the time of suit was the Hungarian government in view of nationalization decrees. The defense was held insufficient. That disposition does not help plaintiff here, where Bank of America is resisting on the ground that plaintiff voluntarily and purposefully used it as a conduit for some obligation that plaintiff had to the Libyan government and in which defendant had absolutely no interest.

The motion is denied. So ordered.